DOWNEY, Judge.
At approximately 9:30 p. m., an officer of the Orlando Police Department was dispatched to the Red Carpet Inn to apprehend the appellee, who was a suspect in a shooting which had just occurred at the Jim Russ Bar in Orlando. The officer was given a description of appellee, his car, and its license tag number and was informed that appellee was supposed to be in possession of a long barreled Western type pistol.
Upon arriving at the Red Carpet Inn the officer located the described car in the Inn parking lot. A “quick look” through the window with the assistance of a flashlight failed to reveal anything of interest. The officer then entered the Inn, found appel-lee in an intoxicated condition, and (after assistance arrived) placed him under arrest. A search of appellee revealed he was unarmed. Appellee was then placed in a police car while several of the officers once again shined their flashlights through the windows of appellee’s car and saw a gun protruding from under the front passenger seat. The officers then obtained the keys to the car from appellee’s pocket and opened the car door. Nothing was moved inside the car until shortly after-wards when the department inventory officer arrived on the scene. The car was then inventoried and towed away.
Appellee was charged with assault with intent to commit murder in the first degree. The trial court granted appellee’s motion to suppress tangible evidence obtained as a result of an unlawful search of appellee’s car. The trial judge based his order of suppression upon several grounds: 1) lack of a search warrant; 2) lack of evidence of any danger that the car would be removed; 3) lack of consent; 4) lack *476 of evidence to show that the gun observed was the gun involved in the shooting at the Jim Russ Bar; 5) the search was not an inventory search since it was not necessary to take the vehicle into custody. This appeal is directed to that order of suppression.
As has so often been said only unreasonable searches are condemned by the Federal and State constitutions. See, e. g., Gaskins v. State, Fla.1956, 89 So.2d 867; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The totality of the circumstances presented in this case leads us to conclude that the officers had a right after discovering the gun in plain view to open the car and take the gun into custody. The officers were directed to this particular location to apprehend appel-lee. They were informed that appellee was a suspect in an earlier shooting at another bar and that he was armed with a pistol. Upon arresting the appellee and finding him unarmed, a logical deduction followed, namely, that appelle had left the gun in his car, which car the officers had already located in the parking lot. A more careful view through the car windows with the aid of a flashlight revealed the gun protruding from under the front seat. At this point it seems to us the officers had every right to obtain possession of the weapon which they could plainly see as it could be vital as evidence in subsequent charges growing out of the criminal incident under investigation. To leave the car with the gun in it in the Red Carpet Inn parking lot for the night or until they could obtain a search warrant would be rather unprofessional police procedure. Cars have more than one set of keys and anyone interested in helping appellee could have disposed of the car and weapon. Of course, an officer could have been stationed with the car while a search warrant was sought. But the point is, under these circumstances it was not necessary to obtain a search warrant. With the background information the officers had when they saw the gun in plain view they were justified in proceeding as they did.
The factual setting of this case is not unlike that found in Johnson v. State, Fla. 1971, 252 So.2d 361, in which the Supreme Court upheld the seizure of a weapon protruding from under the seat of a car. The officers saw the gun in plain view after having taken the shooting suspect to the hospital to treat his head wound.
Search and seizure questions are difficult at best, and it is with some reluctance that we reverse the findings of the trial judge on such matters. However, after careful study of the briefs and record, we cannot avoid the conclusion that he misconceived the legal effect of the evidence before him.
Accordingly, the order appealed from is reversed and the cause is remanded for further proceedings.
OWEN, C. J., concurs.
WALDEN, J., dissents without opinion.