# HAYES v. FLORIDA

No. 83-6766.   Argued January 9, 1985—Decided March 20, 1985

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BRENNAN, J., filed an opinion concurring in the judgment, in which MARSHALL, J., joined, *post*, p. 818. BLACKMUN, J., concurred in the judgment. POWELL, J., took no part in the consideration or decision of the case.

*Michael E. Raiden* argued the cause and filed a brief for petitioner.

*William I. Munsey, Jr.*, Assistant Attorney General of Florida, argued the cause for respondent. With him on the brief was *Jim Smith*, Attorney General.

JUSTICE WHITE delivered the opinion of the Court.

The issue before us in this case is whether the Fourth Amendment to the Constitution of the United States, applicable to the States by virtue of the Fourteenth Amendment, was properly applied by the District Court of Appeal of Florida, Second District, to allow police to transport a suspect to the station house for fingerprinting, without his consent and without probable cause or prior judicial authorization.

A series of burglary-rapes occurred in Punta Gorda, Florida, in 1980. Police found latent fingerprints on the doorknob of the bedroom of one of the victims, fingerprints they believed belonged to the assailant. The police also found a herringbone pattern tennis shoe print near the victim's front porch. Although they had little specific information to tie petitioner Hayes to the crime, after police interviewed him along with 30 to 40 other men who generally fit the description of the assailant, the investigators came to consider petitioner a principal suspect. They decided to visit petitioner's home to obtain his fingerprints or, if he was uncooperative, to arrest him. They did not seek a warrant authorizing this procedure.

Arriving at petitioner's house, the officers spoke to petitioner on his front porch. When he expressed reluctance voluntarily to accompany them to the station for fingerprinting, one of the investigators explained that they would therefore arrest him. Petitioner, in the words of the investigator, then "blurted out" that he would rather go with the officers to the station than be arrested. App. 20. While the officers were on the front porch, they also seized a pair of herringbone pattern tennis shoes in plain view.

Petitioner was then taken to the station house, where he was fingerprinted. When police determined that his prints matched those left at the scene of the crime, petitioner was placed under formal arrest. Before trial, petitioner moved to suppress the fingerprint evidence, claiming it was the fruit of an illegal detention. The trial court denied the motion and admitted the evidence without expressing a reason. Petitioner was convicted of the burglary and sexual battery committed at the scene where the latent fingerprints were found.

The District Court of Appeal of Florida, Second District, affirmed the conviction. 439 So. 2d 896 (1983). The court declined to find consent, reasoning that in view of the threatened arrest it was, "at best, highly questionable" that Hayes voluntarily accompanied the officers to the station. *Id.*, at 898. The court also expressly found that the officers did not have probable cause to arrest petitioner until after they obtained his fingerprints. *Id.*, at 899. Nevertheless, although finding neither consent nor probable cause, the court held, analogizing to the stop-and-frisk rule of *Terry* v. *Ohio*, 392 U. S. 1 (1968), that the officers could transport petitioner to the station house and take his fingerprints on the basis of their reasonable suspicion that he was involved in the crime. 439 So. 2d, at 899, 904.

The Florida Supreme Court denied review by a four-to-three decision, 447 So. 2d 886 (1983). We granted certiorari to review this application of *Terry*, 469 U. S. 816 (1984), and we now reverse.

We agree with petitioner that *Davis* v. *Mississippi*, 394 U. S. 721 (1969), requires reversal of the judgment below. In *Davis*, in the course of investigating a rape, police officers brought petitioner Davis to police headquarters on December 3, 1965. He was fingerprinted and briefly questioned before being released. He was later charged and convicted of the rape. An issue there was whether the fingerprints taken on December 3 were the inadmissible fruits of an illegal detention. Concededly, the police at that time were without prob-

able cause for an arrest, there was no warrant, and Davis had not consented to being taken to the station house. The State nevertheless contended that the Fourth Amendment did not forbid an investigative detention for the purpose of fingerprinting, even in the absence of probable cause or a warrant. We rejected that submission, holding that Davis' detention for the purpose of fingerprinting was subject to the constraints of the Fourth Amendment and exceeded the permissible limits of those temporary seizures authorized by *Terry* v. *Ohio, supra.* This was so even though fingerprinting, because it involves neither repeated harassment nor any of the probing into private life and thoughts that often marks interrogation and search, represents a much less serious intrusion upon personal security than other types of searches and detentions. 394 U. S., at 727. Nor was it a sufficient answer to the Fourth Amendment issue to recognize that fingerprinting is an inherently more reliable and effective crime-solving mechanism than other types of evidence such as lineups and confessions. *Ibid.* The Court indicated that perhaps under narrowly confined circumstances, a detention for fingerprinting on less than probable cause might comply with the Fourth Amendment, but found it unnecessary to decide that question since no effort was made to employ the procedures necessary to satisfy the Fourth Amendment. *Id.,* at 728. Rather, Davis had been detained at police headquarters without probable cause to arrest and without authorization by a judicial officer.

Here, as in *Davis,* there was no probable cause to arrest, no consent to the journey to the police station, and no judicial authorization for such a detention for fingerprinting purposes.[1] Unless later cases have undermined *Davis* or

---

[1] The Florida District Court of Appeal judged this case on the basis of its determination that the police were without probable cause to arrest and that Hayes did not voluntarily agree to accompany the officers to the police station. Although the State invites us to review the record and hold either that there was probable cause to arrest or that Hayes voluntarily

we now disavow that decision, the judgment below must be reversed.

None of our later cases have undercut the holding in *Davis* that transportation to and investigative detention at the station house without probable cause or judicial authorization together violate the Fourth Amendment. Indeed, some 10 years later, in *Dunaway* v. *New York,* 442 U. S. 200 (1979), we refused to extend *Terry* v. *Ohio, supra,* to authorize investigative interrogations at police stations on less than probable cause, even though proper warnings under *Miranda* v. *Arizona,* 384 U. S. 436 (1966), had been given. We relied on and reaffirmed the holding in *Davis* that in the absence of probable cause or a warrant investigative detentions at the police station for fingerprinting purposes could not be squared with the Fourth Amendment, 442 U. S., at 213–216, while at the same time repeating the possibility that the Amendment might permit a narrowly circumscribed procedure for fingerprinting detentions on less than probable cause. Since that time, we have several times revisited and explored the reach of *Terry* v. *Ohio,* most recently in *United States* v. *Sharpe, ante,* p. 675, and *United States* v. *Hensley,* 469 U. S. 221 (1985). But none of these cases have sustained against Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes, whether for interrogation or fingerprinting, absent probable cause or judicial authorization.

Nor are we inclined to forswear *Davis.* There is no doubt that at some point in the investigative process, police pro-

---

went with the officers to the station, we decline to become involved in these fact-bound issues. We also put aside the State's suggestion that the inevitable discovery exception to the exclusionary rule, see *Nix* v. *Williams,* 467 U. S. 431 (1984), applies in this case. This argument was not presented to or passed upon by any of the state courts and is presented here for the first time. We thus address only the issue decided by the Florida court and presented in the petition for certiorari.

cedures can qualitatively and quantitatively be so intrusive with respect to a suspect's freedom of movement and privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments. *Dunaway, supra,* at 212; *Florida* v. *Royer,* 460 U. S. 491, 499 (1983) (plurality opinion). And our view continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, at least where not under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause.[2]

None of the foregoing implies that a brief detention in the field for the purpose of fingerprinting, where there is only reasonable suspicion not amounting to probable cause, is necessarily impermissible under the Fourth Amendment. In addressing the reach of a *Terry* stop in *Adams* v. *Williams,* 407 U. S. 143, 146 (1972), we observed that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Also, just this Term, we concluded that if there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information. *United States* v. *Hensley, supra,* at 229, 232, 234. Cf. *United States*

---

[2] Thus, in *United States* v. *Sharpe, ante,* p. 675, where we recently sustained a 20-minute investigatory stop on a highway, we pointed out that the pertinent facts in *Dunaway,* where we invalidated the detention, were "that (1) the defendant was taken from a private dwelling; (2) he was transported unwillingly to the police station; and (3) he there was subjected to custodial interrogation resulting in a confession." *Ante,* at 684, n. 4.

v. *Place,* 462 U. S. 696 (1983); *United States* v. *Martinez-Fuerte,* 428 U. S. 543 (1976); *United States* v. *Brignoni-Ponce,* 422 U. S. 873 (1975). There is thus support in our cases for the view that the Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch. Cf. *United States* v. *Place, supra.* Of course, neither reasonable suspicion nor probable cause would suffice to permit the officers to make a warrantless entry into a person's house for the purpose of obtaining fingerprint identification. *Payton* v. *New York,* 445 U. S. 573 (1980).

We also do not abandon the suggestion in *Davis* and *Dunaway* that under circumscribed procedures, the Fourth Amendment might permit the judiciary to authorize the seizure of a person on less than probable cause and his removal to the police station for the purpose of fingerprinting. We do not, of course, have such a case before us.[3] We do note, however, that some States, in reliance on the suggestion in *Davis,* have enacted procedures for judicially authorized seizures for the purpose of fingerprinting. The state courts are not in accord on the validity of these efforts to insulate investigative seizures from Fourth Amendment invalidation. Compare *People* v. *Madson,* 638 P. 2d 18, 31–32 (Colo. 1981), with *State* v. *Evans,* 215 Neb. 433, 438–439, 338 N. W. 2d 788, 792–793 (1983), and *In re an Investigation into Death of Abe A.,* 56 N. Y. 2d 288, 295–296, 437 N. E. 2d 265, 269 (1982).

As we have said, absent probable cause and a warrant, *Davis* v. *Mississippi,* 394 U. S. 721 (1969), requires the

---

[3] Nor is there any suggestion in this case that there were any exigent circumstances making necessary the removal of Hayes to the station house for the purpose of fingerprinting.

reversal of the judgment of the Florida District Court of Appeal.

*It is so ordered.*

JUSTICE BLACKMUN concurs in the judgment.

JUSTICE POWELL took no part in the consideration or decision in this case.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring in the judgment.

A young man is picked up by the police. He is taken to the police station, where he is held while his fingerprints are taken. The police have neither probable cause to arrest nor have they obtained a warrant.

These were the facts of *Davis* v. *Mississippi*, 394 U. S. 721 (1969). They are also the facts of the instant case. We held in *Davis* that the detention was an unreasonable seizure in violation of the Fourth Amendment. The facts of *Davis* did not raise the question whether warrantless on-site finger-printing would constitute a reasonable search or seizure for Fourth Amendment purposes. Thus, although we noted that "the general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting context," we sensibly left open the question "whether the requirements of the Fourth Amendment could be met by narrowly circumscribed procedures for obtaining, during the course of a criminal investigation, the fingerprints of individuals for whom there is no probable cause to arrest." *Id.*, at 728.

The Court's opinion today recognizes that the instant case is indistinguishable from *Davis* and goes on to draw the unsurprising conclusion that the seizure here, like that in *Davis*, violated the Fourth Amendment. In reaffirming *Davis*, the Court holds that a suspect may not be apprehended, detained, and forced to accompany the police to another location to

be fingerprinted without a warrant or probable cause. *Ante*, at 815–816. The intrusion on the suspect's freedom of action in such a case is simply too great to be "reasonable" under the Fourth Amendment. I fully agree.

Unlike the Court in *Davis*, however, the Court today— after tidily disposing of the case before it—returns to its regrettable assault on the Fourth Amendment by reaching beyond any issue properly before us virtually to hold that on-site fingerprinting without probable cause or a warrant is constitutionally reasonable. See *ante*, at 817 ("There is thus support in our cases for the view that the Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch"). The validity of on-site fingerprinting is no more implicated by the facts of this case than it was by *Davis*. Consequently I disagree with the Court's strained effort to reach the question today.

If the police wanted to detain an individual for on-site fingerprinting, the intrusion would have to be measured by the standards of *Terry* v. *Ohio*, 392 U. S. 1 (1968), and our other Fourth Amendment cases. Yet the record here contains no information useful in applying *Terry* to this hypothetical police practice. It would seem that on-site fingerprinting (apparently undertaken in full view of any passerby) would involve a singular intrusion on the suspect's privacy, an intrusion that would not be justifiable (as was the patdown in *Terry*) as necessary for the officer's protection. How much time would elapse before the individual would be free to go? Could the police hold the individual until the fingerprints could be compared with others? The parties did not brief or argue these questions, the record contains nothing that is useful in their resolution, and (naturally enough) the courts below did not address them.

Ordinarily—outside the Fourth Amendment context, at any rate—we wait for a case to arise before addressing the application of a legal standard to a set of facts. I disagree with the Court's apparent attempt to render an advisory opinion concerning the Fourth Amendment implications of a police practice that, as far as we know, has never been attempted by the police in this or any other case.