488 So.2d 77 (1986)
Joe HAYES, Appellant,
v.
STATE of Florida, Appellee.
No. 82-436.
District Court of Appeal of Florida, Second District.
January 29, 1986.
*78 James Marion Moorman, Public Defender, and Paul Helm, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
This case is before this court for the second time on appeal. Mr. Hayes initially appealed from his convictions for burglary and sexual battery, which were affirmed by this court in Hayes v. State, 439 So.2d 896 (Fla. 2d DCA), cert. denied, 447 So.2d 886 (Fla. 1983). Subsequently, the United States Supreme Court granted certiorari to review the application of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in our first opinion, to sustain the apprehension, detention and transportation to the Punta Gorda jail of Mr. Hayes, for the purpose of taking his fingerprints. The United States Supreme Court in Hayes v. Florida, 470 U.S. ___, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), reversed our holding finding that we misconstrued Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). The United States Supreme Court, in Hayes, held that a proper construction and application of Davis mandated a finding that the transportation to and investigative detention of Mr. Hayes at the jail, without probable cause or judicial authorization, violated the fourth amendment to the Constitution of the United States.
The United States Supreme Court in Hayes, however, specifically declined to consider whether the inevitable discovery exception to the exclusionary rule applied in this case. The basis of that declination was that the argument was not presented to or passed upon by any of the state courts, and was presented in the United States Supreme Court for the first time. See 470 U.S. at ___ n. 1, 105 S.Ct. at 1646 n. 1, 84 L.Ed.2d at 709 n. 1. The final holding of the United States Supreme Court in Hayes was: "Absent probable cause and a warrant, Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), requires the reversal of the judgment of the Florida Court of Appeal." Significantly, a new trial was not ordered. Because a new trial was not ordered, and because of the declination of the United States Supreme Court to consider the inevitable discovery exception, we have, on remand of this case to us, directed the parties to address, in further briefs and oral argument, solely the question of whether Mr. Hayes' fingerprints which were taken at the Punta Gorda Police Station were subject to inevitable discovery as discussed in Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The parties, as a result of our direction, have briefed and orally argued this issue and we have engaged in extensive research and study into the question of whether inevitable discovery, or the companion and inter-related doctrines of independent source, or attenuation, apply in this case. We hold that they do apply and again affirm the convictions and sentences of Mr. Hayes.
In order to determine whether inevitable discovery, independent source and/or attenuation are applicable in this case, we need to consider the specific holding of the Supreme Court of the United States in Hayes v. Florida. After careful study and restudy of that opinion, we conclude that it is limited to holding that a fourth amendment violation occurred only in regard to the involuntary removal of Mr. Hayes from his home to the police station and his detention there. More specifically, the United States Supreme Court in Hayes did not *79 hold that the taking of the fingerprints in itself constituted a violation of Mr. Hayes' fourth amendment rights. To the contrary, the court stated:
There is thus support in our cases for the view that the Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch.
470 U.S. at ___, 105 S.Ct. at 1648, 84 L.Ed.2d at 711. Neither did the court in Hayes v. Florida discuss Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We conclude that under Schmerber, there is neither a fourth amendment, fifth amendment nor sixth amendment violation of a compelled submission to fingerprinting when the individual is otherwise properly in custody or it is otherwise carried out with dispatch. Specifically, the court in Schmerber held:
On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it. (Footnote omitted.)
384 U.S. at 757, 86 S.Ct. at 1826, 16 L.Ed.2d at 916. See also Vena v. State, 295 So.2d 720 (Fla. 3d DCA 1974).
We think it significant, in our analysis of the exceptions to the exclusionary rule, that Schmerber involved the compelled submission to a blood test to determine whether on analysis the sample would reveal a blood alcohol level which would have been material in prosecuting Mr. Schmerber for the offense of driving an automobile while under the influence of intoxicating liquor. Comparatively, a compelled sample of blood, though proper, is a far greater intrusion than a requirement to submit to fingerprinting. While the chemical makeup of the blood will change in an individual, with time, an individual's fingerprints never change. Therefore, in a blood sample there is evidence compelled from an individual that time and circumstances will eliminate.
In our analysis, therefore, we follow the direction of the Schmerber court that the constitutional protections against compulsion do not apply when that compulsion makes the accused the source of identification related evidence. We find a major distinction between evidence that is compelled without constitutional protections, which is testimonial (such as a confession) or crime-related (evidence resulting from and peculiar to the crime), as opposed to identification evidence that exists permanently and independent of the fact that a crime has been committed. We also conclude that fingerprint evidence is one of the least intrusive types of evidence that may properly be obtained by means of compulsion. Physical appearances or characteristics may change or be changed. The chemical makeup of the blood of an individual will change depending upon time and circumstances. Likewise, voices used for the purpose of voice print comparisons can be made to change. Fingerprints, however, never change.
During the trial of Mr. Hayes, a fingerprint expert from the Federal Bureau of Investigation testified in regard to fingerprint evidence:
When individuals are born, these prints are already formed on the fingers and the palm. They do not change throughout life. They grow, the characteristics grow, the patterns that are formed, they grow in size but the relationship of the characteristics do not change. It's unique to every individual. And they remain constant until they are destroyed by decomposition after death.
*80 Thus, in our consideration of the applicability of the inevitable discovery or independent source exception to Mr. Hayes' inked fingerprints, we begin with the fact that for as long as Mr. Hayes was alive and subject to trial, his fingerprints would be available for comparison with the latent prints lifted from the scene of the crime for which he was charged and tried.
While the facts established in the record of the trial below are set out in our first opinion, as well as in the Supreme Court opinion, there are certain additional facts that should be emphasized for the purpose of this opinion. The burglary and rape for which Mr. Hayes was subsequently arrested occurred on May 31, 1980. Shortly after the offense occurred, it was reported to local law enforcement agencies and an investigation was undertaken. As a part of that immediate investigation, fingerprint evidence was obtained from the scene of the crime. Various latent fingerprints were lifted from the bedroom of the victim where the rape occurred. One of these latent prints was a thumbprint found on the doorknob on the inside of the bedroom door, which was later compared and identified with the inked prints taken from Mr. Hayes at the Punta Gorda Police Station. Those inked prints were obtained on June 23, 1980. We know from the record before us, that between May 13, 1980, the date of the offense, and June 23, 1980, the date Mr. Hayes' inked fingerprints were obtained, extensive efforts had been made by local law enforcement agencies, in connection with the Federal Bureau of Investigation research facilities, to identify the various latent prints lifted from the scene of the crime. The identification of those latent prints, from the very beginning, played a major part in the investigative efforts of law enforcement agencies in an attempt to solve the crime.
After Mr. Hayes was fingerprinted, a comparison was made at the Punta Gorda Police Station with these inked prints and the latent prints taken from the scene. As a result of that comparison, Mr. Hayes was arrested. At that time, a photograph was also taken of him which was subsequently placed with photographs of other individuals and shown to the victim of the crime. As a result of that photo identification process, the victim was able to identify Mr. Hayes' picture as that of the perpetrator of the crime. She later positively identified Mr. Hayes at the time of trial. While the photograph which initially led to the positive identification of Mr. Hayes by the victim was taken after his arrest, it is clear that the various law enforcement agencies considered him a suspect in the crime prior to his arrest. His place of employment and home address were known and, thus, he was subject to being photographed at any time by local law enforcement agencies if they had chosen to do so.
After Mr. Hayes was arrested and charged, a subsequent order was entered on the motion of defense counsel to employ a forensic fingerprint expert to be paid for by Charlotte County to assist Mr. Hayes and his counsel in the preparation of his defense. We know from our examination of the record that such an expert was employed by Mr. Hayes' counsel and was used to assist him in examining the fingerprint evidence, although that expert was not called by the defense to testify at the time of the trial. Subsequently, on the basis of another motion by defense counsel on September 29, 1980, Mr. Hayes was found to be incompetent to stand trial, based upon testimony of experts appointed at the request of defense counsel. As a result of that finding of incompetency, Mr. Hayes was involuntarily committed to the Department of Health and Rehabilitative Services. He remained there until May 12, 1981, when he was determined, as a result of further examination, to be competent to stand trial.
The trial of Mr. Hayes began on July 7, 1981, more than a year after the date of the crime. At the conclusion of the trial, Mr. Hayes was found guilty of the felonies with which he was charged. As a portion of the sentencing process required by section 921.241, Florida Statutes (1981), Mr. Hayes was fingerprinted in the presence of the trial judge. Those additional inked fingerprints *81 are a part of the original record in the proceeding of this case.[1] The order of sentencing entered on October 5, 1981, also a part of the original record in this case, reflects that the trial judge found that Mr. Hayes was arrested and charged with two other similar crimes which occurred in Charlotte County at approximately the same time as the offense for which he was tried. The sentencing order reflects that those other two crimes were subsequently nol prossed by the state in order to spare the victims the ordeal of testifying at trial. The sentencing order further reflects that the presentence investigation reveals that at the time Mr. Hayes allegedly committed the crimes in Charlotte County, he was also subject to outstanding warrants by law enforcement agencies in the German Federal Republic in connection with similar crimes committed in that country.
It further appears from the record of the proceeding below that Mr. Hayes took the stand and testified in his own behalf over the objection of his defense counsel. During his testimony, he revealed that he had served in the armed forces of the United States of America and, as such, had been routinely fingerprinted. He also stated that those fingerprints were on file not only with the service in which he served, but with the Federal Bureau of Investigation. As a result of other problems that later occurred, Mr. Hayes' testimony was stricken for the purpose of the jury's consideration. However, for our purposes here, it is a part of the record and is available for our consideration as to whether or not his fingerprints were the subject of inevitable discovery or were available from an independent source.[2]
We note that had Mr. Hayes not been arrested because of the fingerprints which have now been held to have been illegally obtained, but because of the identification by the victim in this case, or because of evidence that existed in the other two cases that were nol prossed, he would still have been subject to fingerprinting pursuant to section 30.31, Florida Statutes (1980), which requires that all persons be fingerprinted upon arrest. Section 30.31 places a duty on all sheriffs in the State of Florida to fingerprint all persons charged with a felony and submit such fingerprints to the Federal Bureau of Investigation.[3]
Since the supreme court in Hayes v. Florida has held that the taking of Mr. Hayes' fingerprints was the result of a fourth amendment violation, we find, based upon the record we have of the matters before the trial court, that Mr. Hayes' inked fingerprints were properly admitted even though the result of an improper fourth amendment detention. We do so determine because the record before us shows that Mr. Hayes' inked fingerprints, for comparison purposes, were and are available from independent sources, i.e., his military record, the state's right to have the court order him fingerprinted anew if necessary for trial, and his fingerprints *82 taken in connection with the previous judgment of guilt. Nix v. Williams; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). It is also clear from the record, that because the law enforcement agencies investigating the burglary and rape charges were focusing on fingerprints and other methods of positively identifying Mr. Hayes as the principal suspect in the crime, it was just a matter of time until that identification evidence would have been inevitably discovered for the purpose of a valid arrest. Nix v. Williams.
We also conclude that were we required to remand this case for a new trial, the victim's positive identification of Mr. Hayes and the fingerprint comparison evidence that could now be produced, would be so attenuated that any taint that occurred from Mr. Hayes' unlawful detention would be dissipated. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Florida Rule of Criminal Procedure 3.220(b) provides that a trial judge may, at any time subject to constitutional limitations, order a defendant to be fingerprinted, appear in a lineup or pose for photographs. The trial judge in this case could so now order for the purpose of a retrial if required. If the trial judge had held in the original trial that the fingerprints were improperly obtained, he could have ordered them taken at the time of that trial. Cf. Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314, 321 n. 2 (1982). The fact that Mr. Hayes was originally arrested and brought to trial as a result of an improper compulsion does not impair the power and right of the State of Florida to bring him to trial again. Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541, 545 (1952). As the majority of the court in United States v. Crews, 445 U.S. 463, 472, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537, 546 (1980) held:
Nor did the illegal arrest infect the victim's ability to give accurate identification testimony. Based upon her observations at the time of the robbery, the victim constructed a mental image of her assailant. At trial, she retrieved this mnemonic representation, compared it to the figure of the defendant, and positively identified him as the robber. No part of this process was affected by respondent's illegal arrest.
... .
But in the present case the trial court expressly found that the witness' courtroom identification rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the pretrial identifications, and this determination finds ample support in the record. In short, the victim's capacity to identify her assailant in court neither resulted from nor was biased by the unlawful police conduct committed long after she had developed that capacity.
Insofar as respondent challenges his own presence at trial, he cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. (Footnotes omitted.)
At the time the law enforcement officers took Mr. Hayes into custody, they did not have probable cause to arrest him, but they did have a reasonable suspicion indicating Mr. Hayes' involvement in the crime. Hayes v. State, 439 So.2d at 903. The investigations had begun to focus on Mr. Hayes and his identification would have been inevitably discovered as soon as he was brought to the attention of the victims. It would be proper to try him again were we required to so order. Not only would he be subject to being identified by the victim, he would also be subject to fingerprinting anew for comparison purposes. It is not even remotely suggested here that any new or additional set of inked fingerprints would not be positively compared with the latent prints taken from the scene of the crime, just as were the improperly obtained inked prints of Mr. Hayes.
*83 As Chief Justice Burger wrote for the court in Nix v. Williams, 467 U.S. at ___, 104 S.Ct. at 2501, 81 L.Ed.2d at 387:
[T]he derivative evidence analysis ensures that the prosecution is not put in a worse position simply because of some earlier police error or misconduct. The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation... . The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred... . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation. There is a functional similarity between these two doctrines in that exclusion of evidence that would inevitably have been discovered would also put the government in a worse position, because the police would have obtained that evidence if no misconduct had taken place. (Citations and footnote omitted.) (Emphasis in text.)
Appellant, Mr. Hayes, suggests that it is improper for us, on this appeal, to determine whether the evidence at issue here is the subject of the rule pertaining to inevitable discovery, independent source or attenuation. We disagree. State v. LeCroy, 461 So.2d 88 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985) and State v. McLaughlin, 454 So.2d 617 (Fla. 5th DCA 1984), both cited by appellant, involve cases where the factual matters necessary to decide the question of law did not appear in the record before the court on appeal. Such is not the state of the record before us. We are not required to do a useless act and, therefore, we are not required to remand for a new trial or for the determination of facts that already appear in the record. Burney v. State, 402 So.2d 38 (Fla. 2d DCA 1981); Kocsis v. State, 467 So.2d 384 (Fla. 5th DCA 1985); Boston v. State, 411 So.2d 1345 (Fla. 1st DCA 1982).
Affirmed.
SCHEB, A.C.J., and HALL, J., concur.
NOTES
[1] Section 921.241(2), further provides:

Any such written judgment of guilty of a felony, or a certified copy thereof, shall be admissible in evidence in the several courts of this state as prima facie evidence that the fingerprints appearing thereon and certified by the judge as aforesaid are the fingerprints of the defendant against whom such judgment of guilty of a felony was rendered.
[2] In this regard, see Department of Defense, Instruction 5200.2-R (Dec. 1979). Department of Army Regulation 601-270; Title 28, U.S.C. § 534; 28 Code of Federal Regulations 0.85(b); XXX-XX-XX Fed.Reg. 20388 (Dec. 31, 1969).
[3] Prior to the last oral argument before this court, appellee, State of Florida, filed a request for us to take mandatory judicial notice that shortly after the arrest of Mr. Hayes on June 23, 1980, the Punta Gorda Police Department had possession of an F.B.I. report which showed that Mr. Hayes had an arrest record in 1972 with the New Orleans Police Department. We were further requested to take judicial notice that since the trial of Mr. Hayes, the Punta Gorda Police Department has acquired from the New Orleans Police Department both the inked fingerprint records and police photographs taken by the New Orleans Police Department in 1972. We decline to take such judicial notice in rendering this decision since we must rely upon the record of the facts as they were revealed to the trial court.