**JAMIE PENN, Defendant/Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff/Appellee**

D.C. Crim. App. No. 1996-264

Terr. Ct. Crim. No. F474/1955

Div. of St. Thomas and St. John

March 3, 1999

RUTH ANN MAGNUSON, ESQ., St. Thomas, U.S.V.I., *for appellant*

PAUL J. PAQUIN, ESQ., Assistant Attorney General, St. Thomas, U.S.V.I., *for appellee*

MOORE, *Chief Judge*, FINCH and STEELE, *Judges*

### OPINION OF THE COURT

PER CURIAM

On the night of December 18, 1995, members of the Virgin Islands Narcotics Strike Force arrested an individual for selling cocaine to an undercover agent in Cruz Bay. This individual told the police that he had obtained the contraband from the appellant, Jamie Penn. The police issued a bulletin for the appellant at once.[1]

---

[1] The government asserts that the police wanted to talk to Penn, not arrest him. (See Appellant's App. at 83 ("We wanted to talk to him, find out, based on what [the

190

Later that evening, Virgin Islands Police Sergeant Augustin Brin stopped Penn while he was leaving his residence with his dog for a walk. Penn lived within ten feet of the St. John police station, and officer Brin knew him. (See Appellant's App. at 118 [hereinafter "App."][2] ("I knew Mr. Penn. . . . Q: And where he passed and you passed, you have done that many, many times. . . . A: Yes, that is true.").) Officer Brin stood in the appellant's yard and demanded that he follow him. When the appellant attempted to tie his dog up to a car bumper, the officer drew his firearm and held it on him, calling "don't move or I'll shoot." (See App. at 63, 117.) At trial, officer Brin explained that he drew his weapon as the appellant tied his dog because "he made a furtive move." (App. at 118.)

Despite his apparent anxiety, Brin did not pat down Penn. Instead, he moved the appellant next door to the station, and holstered his gun upon reaching the station. Both men waited on the porch for several minutes until two police vehicles arrived carrying four plain-clothed officers, including Assistant Police Commissioner Angelo Hill and Carl Charleswell. (See App. at 85.) The officers took Penn into the station.

The testimony presented by Penn and the government at trial diverged from that point. Witnesses for the prosecution testified that the appellant proclaimed his innocence while lifting his shirt and pulling down his pants. (See App. at 87-88 ("We asked Mr. Penn what is going on . . . he started opening, lifting up his shirt. We said don't do it out here. Let's go in the back in the captain's room.")). The appellant testified that he revealed himself only at the direction of the police. (See App. at 130 ("Charlesworth told me to lift up my shirt . . . so I lifted up my shirt. . . . then after I sat back down, he told me to get up and pull down my pants. So then I had to pull up my pants to the point where they can see my testicles and everything.")). The police did not yet have a warrant to search Penn or seize items in his possession.

_____

arrestee] was telling us if [Penn], in fact, sold him the drugs, or if [the arrestee] was just throwing it off on him just to further [prolong] the investigation.") (testimony of Assistant Police Commissioner Hill)).

[2]The parties' attorneys are encouraged to review Virgin Islands Rules of Appellate Procedure 24(b) ("the parties are required to consult and agree on the contents of the appendix") and 11(a) ("[a] single record shall be submitted.").

When the appellant pulled down his pants, several officers heard the sound of velcro resonate from the area of his elastic waistband. Associating this sound with the velcro elements of a gun holster, officer Charleswell reached into Penn's waistband and removed a pouch. He immediately opened the pouch and discovered several bags of cocaine. The police did not yet have a warrant to search this pouch. Upon discovery of the cocaine, officer Charleswell arrested the appellant.

On December 27, 1995, Jamie Penn was charged with knowingly distributing or possessing with intent to distribute a controlled substance in violation of V.I. CODE ANN. tit. 19, § 604(a)(1). The Territorial Court denied appellant's motion to suppress the evidence obtained from him on December 18, 1995,[3] and admitted the evidence at trial over Penn's objection. (See Trial Tr., Oct. 1, 1996, at 158-60.) The Court denied his renewed objection at the close of trial. (See id. at 160, 307-17.) Penn was convicted and has filed a timely appeal.

### DISCUSSION

Penn invokes this Court's subject matter jurisdiction under 4 V.I.C. § 33. He draws our attention to the Fourth Amendment to the United States Constitution, which guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend IV. In *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the Supreme Court created a narrow exception to this guarantee by permitting police officers briefly to stop and make "reasonable

---

[3] The trial judge refused to exclude the physical evidence obtained by V.I.P.D. in large part because he did not believe the defendant/appellant's version of the facts, that officer Brin ordered him to the police station at gunpoint. At the time of the suppression hearing, Penn could not fully establish what had transpired on December 18th because he could not identify or locate officer Brin. The judge observed:

It seems to me that it will be incredible that a police officer . . . will pull a gun on you and say "don't move, I'll shoot," and then take you to the police station and leave you outside. That is incredible to me. . . . [Penn] went to the police station to buy soda from a machine.

(App. at 103.) *See also* Trial Tr., Oct. 1, 1996, at 316 ("[Penn] went into the Police Station either voluntarily or to buy a soda.").

inquiries" of persons reasonably suspected of criminal activity. See *id.* at 30.

■ The Terry Court ruled that a "stop" must be justified by reasonable suspicion arising from particularized, articulable facts suggesting that the suspect is engaged in criminal behavior. *See Terry*, 392 U.S. at 21. The constitutional proscription against unreasonable searches and seizures is not suspended, however, when state action falls within this recognized exception to the warrant requirement. Even if a stop is "justified at its inception," it must remain "reasonably related in scope to the circumstances which justified the intrusion in the first place" to stay within the confines of the Constitution. *See Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983); *Terry*, 392 U.S. at 19-20, 30. Applying these criteria to the present case, we come to the ineluctable conclusion that the Virgin Islands Police Department exceeded the limits of the investigative stop permitted under *Terry*.

The Court first notes that Penn's detention cannot be justified as a legal arrest. The police officers did not have probable cause to arrest the appellant for any offense, let alone knowingly distributing cocaine, or possessing cocaine with intent to distribute. They knew only that an arrestee had implicated Penn in the illicit drug trade. This Court is required to closely scrutinize warrantless arrests and searches for probable cause. *See Gates*, 462 U.S. 213 at 236, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (observing that Fourth Amendment evinces "strong preference for searches conducted pursuant to a warrant"); *see also Ornelas v. United States*, 517 U.S. 690, 698, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996). If the police had presented this bare-bones information to a judge, an arrest warrant properly would not have issued. *See Aguilar v. Texas*, 378 U.S. 108, 109, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), overruled on other grounds, *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) (ruling that officer's statement that he had "received reliable information from a credible person" that a controlled substance might be present did not amount to probable cause). Further, the government acknowledges that the police sought only to stop the appellant and make a reasonable inquiry. For these reasons, it is clear that Penn's detention must be analyzed under *Terry*. The appellant was "*Terry*-stopped."

The Court finds that the police officers' stop of the appellant was justified at its commencement. The police had issued a bulletin for Penn after they received information that he was involved in a criminal enterprise. Although association with an arrestee is no basis for reasonable suspicion, *see Ybarra v. Illinois*, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979), and the arrestee's reliability was not established, he spoke against his penal interest in identifying the appellant as a cocaine distributor because his comment contained an implicit admission of possession. Under the "totality of the circumstances," *see United States v. Cortez*, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981), the police could have reasonably suspected that the appellant was engaged in criminal activity.

Unfortunately, the officers' subsequent conduct lacks the same semblance of reasonableness. Their seizure and forced movement of Penn exceeded the limited intrusion permitted during a *Terry* stop. First, officer Brin demanded that the appellant follow him to the police station. Although "there are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention," *see Royer*, 460 U.S. at 503, none are apparent in this case. Officer Brin stopped Penn within ten feet of the police station. He could have safely questioned Penn right there, but nonetheless took him to the police station at gunpoint to await the arrival of other officers. *See id.* at 505 (noting that record was devoid of "facts which would support a finding that the legitimate law enforcement purposes which justified the detention . . . were furthered by removing [the defendant] to the police room"). In *Royer*, the Supreme Court ruled that the police exceeded the permissible scope of a *Terry* stop by transporting a suspect forty feet to a police interrogation room. *See id.* at 507. In light of the coercive tactics employed by the police officers in this case, we come to the same conclusion.

Second, officer Brin restrained the appellant by pointing his firearm at him and calling "don't move or I'll shoot." Officer Brin explained that he did so because the appellant made a "furtive move" in tying his dog up to a car bumper. "There is no per se rule that pointing guns at people . . . constitutes an arrest." *Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir. 1995); *see also* Wayne R.

194

LaFave, Search and Seizure § 9.2(d) (3d ed. 1996). Sergeant Brin's explanation that he drew his weapon as a reasonable protective precaution is not entirely convincing because he never frisked Penn for a weapon, even after he holstered his firearm. It is more likely that Brin drew his gun to prevent Penn from terminating their encounter at some point. This is not permitted under *Terry*. *See United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980).

Based on the trial testimony of officers Brin and Charlesworth, as well as the appellant, we conclude that the trial court's finding that Penn voluntarily visited the police station to buy soda from a machine was clearly erroneous. *See* 4 V.I.C. § 33 ("Findings of fact shall not be set aside unless [they are] clearly erroneous.").

Finally, between two and four officers escorted Penn to the captain's room in the back of the police station, where he was effectively strip-searched. The Supreme Court has repeatedly ruled that moving a stopped suspect to a police station for investigative purposes exceeds the scope of the narrowly drawn intrusion permitted by *Terry*. *See, e.g., Hayes v. Florida*, 470 U.S. 811, 816, 84 L. Ed. 2d 705, 105 S. Ct. 1643 (1985) (holding that the Fourth Amendment applies "when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes"); *Royer*, 460 U.S. at 503 (discussed supra); *Dunaway v. New York*, 442 U.S. 200, 216, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979) (finding that stopped suspect was unreasonably seized when police took him to police station without probable cause and against his will). The officers' movement of the appellant to the back of the police station in lieu of performing an "investigative stop" at the scene clearly exceeded their limited authority under *Terry*. Combining this observation with officer Brin's unjustified command that Penn leave his property, which was enforced at gunpoint, the Court concludes that the officers' conduct was not "reasonably related in scope to the circumstances which justified the intrusion in the first place."

■ Penn's conviction must be vacated because the officers lacked probable cause to arrest him at the time they effectively did

so. "A police confinement that goes beyond the limited restraint of a *Terry* investigatory stop may be constitutionally justified only by probable cause." *Royer*, 389 So. 2d 1007, 1019 (Fla. D. Ct. App. 1980), aff'd, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). The police department's coercive investigation is precisely the sort of calculated police behavior that the exclusionary rule was designed to deter.[4] The officers' unconstitutional actions directly led to the fruits of their search. The trial court thus erred in admitting the pouch taken from Penn. *See Wong Sun v. United States*, 371 U.S. 471, 481, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *Weeks v. United States*, 232 U.S. 383, 397, 58 L. Ed. 652, 34 S. Ct. 341 (1914), overruled on other grounds, *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961). We need not address the other issues presented by appellant. Penn's conviction must be vacated and the case remanded to the Territorial Court for further proceedings consistent with this opinion.

DATED this 3 day of March, 1999

---

[4]The government asserts that Penn consented to officer Charlesworth's strip search, thus bringing the officers' conduct within another, broader exception to the Fourth Amendment warrant and probable cause requirements. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973) (discussing consent exception). This contention is totally incredible. The appellant was led to the police station at gunpoint in the evening hours, confronted by numerous police officers and taken to the captain's room. The officers forcibly seized Penn and took him out of familiar surroundings, at least suggesting they contemplated "an undertaking which does not depend upon the cooperation of the individual" by confronting him with numerous police officers. *See* LaFave, supra, at § 8.2(b). The police department then subjected him to a strip search in a coercive stationhouse atmosphere. Any expression of· consent by Penn could not have been meaningful or voluntary under such circumstances. "The consent was tainted by the illegality." *Royer*, 460 U.S. at 507.