977 So.2d 712 (2008)
Benjamin KOLLMER, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-1852.
District Court of Appeal of Florida, First District.
March 25, 2008.
*713 Eric A. Latinsky, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, and Heather Flanagan Ross, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Appellant Benjamin Kollmer appeals the trial court's two orders of February 22, 2007, denying his motion to suppress the victim's identification of him, and motion to dismiss. We affirm the trial court's order denying the motion to dismiss without further comment. However, we agree with appellant that the officers exceeded the scope of a lawful investigatory stop in this case. Therefore, we reverse the order denying appellant's motion to suppress.

I. Facts
The relevant facts are largely undisputed. The State of Florida filed an information in the Fourth Judicial Circuit Court for Duval County, charging appellant with burglary of a conveyance. The State alleged that on June 3, 2006, appellant broke into a car owned by the victim Brian Thomas Paris, with the intent to commit theft therein.[1]
Appellant filed a motion to suppress Mr. Paris' identification of him as the individual who broke into his car. Appellant asserted he was illegally stopped, detained, and ultimately transported back to the scene of the burglaries for a "show-up" identification, in violation of his constitutional rights. At the hearing on the motion, the parties agreed to rely on the deposition testimony of three Jacksonville Sheriffs Officers, rather than present live witnesses. First, Officer Newman testified by deposition that on the evening of June 3, 2006, he was working in Jacksonville when he received a call from the dispatcher reporting a car robbery in progress in his area. Officer Newman stated that when he arrived at the scene, he overheard an unidentified young woman tell another officer "something about we had just drove past the person that they suspected that was breaking into the vehicles." He testified he saw a white male fleeing into a wooded area; he could not describe the man's height, weight, hair color or clothing.
*714 Next, Officer Propper, a canine handler for the canine unit of the Jacksonville Sheriffs Office, testified by deposition that he was called to the scene of the car burglaries, and was informed the suspect fled into the woods. Officer Propper deployed his dog, Chico, to track the suspect. Chico located a portable CD player and a black container on the path in the woods. The dog tracked the scent from those items to a yard, and discovered a man lying on his back on the ground. The man made some movement away from the dog, and Chico responded with "pain compliance," biting appellant on the stomach.
Finally, Officer Villabroza testified by deposition that he was with Officer Propper, and saw the canine Chico apprehend a white male, later identified as appellant, lying on the ground near the fence. Officer Villabroza ordered the man to turn on his stomach and used handcuffs to detain him. The State has stipulated that appellant was handcuffed, placed in the police car, and transported back to the scene of the burglary for the victim, Mr. Paris, to identify.
The trial court summarily denied the motion to suppress. Following the court's order, appellant entered a plea of guilty, but expressly reserved the right to appeal his motion to suppress. He was sentenced to a term of nine months' community control, followed by one year probation.

II. Analysis
Appellant asserts the trial court erred in denying his motion to suppress the identification because the State failed to show that his detention, his transport for a "show-up," and his identification pursuant to the "show-up," were lawfully conducted. We agree with appellant to the extent he argues the officers exceeded the scope of a lawful investigatory stop, and we reverse the trial court's order on the motion.
The United States Supreme Court, followed by the Florida Supreme Court, has identified three levels of police-citizen encounters. Those categories are as follows:
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
The second level of police-citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
. . . [T]he third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed.
Popple v. State, 626 So.2d 185, 186 (Fla. 1993) (internal citations omitted).
Thus, to detain an individual for an investigatory stop the State need only demonstrate that police officers had a reasonable suspicion that the individual was involved in the commission of a crime. See § 901.151(2), Fla Stat. (2006). In U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Supreme Court reaffirmed that "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal *715 activity `may be afoot,' even if the officer lacks probable cause." As noted above, the investigatory stop must be based on something more than a bare suspicion of criminal activity. See Daniels v. State, 543 So.2d 363, 365 (Fla. 1st DCA 1989). Rather, "based on the totality of the circumstances, the officer must articulate in particular and objective terms his reasonable suspicion of criminal activity." Id.
In this case, the officers reasonably suspected appellant was the individual who committed the burglaries, sufficient to justify the investigatory stop. Although the officers had only a vague description of the suspect, their suspicion of appellant is nonetheless supported by the facts. Appellant was discovered near the scene of the burglaries, in a wooded area which more than likely was deserted given the late hour. Moreover, Officer Propper testified his dog Chico identified appellant's scent from the items he discovered in the woods, and tracked the scent to appellant. Based on the totality of the circumstances, the officers were justified in detaining appellant in order to question him or investigate his role in the burglaries.
However, while we agree that the officers articulated a reasonable suspicion that appellant was involved in the burglaries, and were therefore authorized to conduct an investigatory stop, we hold that the officers exceeded the scope of a lawful investigatory stop in this case. Regarding investigatory stops, Florida Statutes, section 901.151, provides, "[n]o person shall be temporarily detained . . . longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof." See § 901.151(3), Fla Stat. (2006) (emphasis added). It appears well settled that an investigatory stop may not extend beyond the place of the initial encounter:
Where . . . the detained individual is physically removed from the scene and involuntarily transported to the police station for questioning and/or investigation, the courts have had little difficulty in construing such a detention to be a de facto arrest requiring either probable cause or prior judicial authorization.
Saturnino-Boudet v. State, 682 So.2d 188, 193 (Fla. 3d DCA 1996); see also Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) (holding that, where there was no probable cause to arrest the petitioner, no consent for the journey to the police station and no prior judicial authorization for detaining him, the investigative detention at the station for fingerprinting purposes violated the petitioner's rights under the Fourth Amendment); Dunaway v. New York, 442 U.S. 200, 216, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (declining to extend Terry v. Ohio, holding "the Rochester police violated the Fourth and Fourteenth Amendments when, [pursuant to a Terry Stop and] without probable cause, they seized petitioner and transported him to the police station for interrogation.").
In this case, while conducting the otherwise lawful investigatory stop, Officer Villabroza handcuffed appellant, placed him in the police car, and transported him away him from the place where he was initially apprehended, presumably for Mr. Paris to identify him. The State does not contend it had probable cause to arrest appellant at that time, nor does it suggest appellant consented to be transported. Accordingly, we hold the officers exceeded the scope of a lawful investigatory stop, in violation of appellant's Fourth and Fourteenth Amendment Rights. Because we hold that appellant's transportation to the "show-up" was illegal, we need not address *716 whether his subsequent identification is also unlawful.
Therefore, we reverse the court's order denying appellant's motion to suppress the identification, and remand the case with directions to the trial court to vacate appellant's conviction pursuant to the plea.
REVERSED and REMANDED with directions.
WEBSTER, BENTON, and POLSTON, JJ., concur.
NOTES
[1] Another count for burglary of a conveyance, relating to a different victim on the same date, was charged and later dismissed by the State.