994 So.2d 1198 (2008)
Glenn A. GRIGGS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-1579.
District Court of Appeal of Florida, Fifth District.
November 14, 2008.
*1199 James S. Purdy, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Kellie A. Nielan, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
The appellant, Glenn A. Griggs, asks us to determine whether the trial court erred in denying his motion for discharge because of the running of the speedy trial period. We reverse his judgment and sentence because in our view Mr. Griggs was "arrested" prior to or at the time he agreed to provide substantial assistance to law enforcement. Since Bulgin v. State, 912 So.2d 307 (Fla.2005), applies in these circumstances, we conclude that there was no waiver of speedy trial and that the trial court reversibly erred in not granting the motion for discharge.
According to the testimony presented by the State at a hearing on Mr. Griggs' motion for discharge based on the running of the speedy trial period, Mr. Griggs was stopped on April 19, 2005, while driving within the City of Orlando by members of the Orlando Police Department, because of a broken taillight. The officer who stopped him related that he became aware that there was a "planned drug deal" taking place in the area. He further testified, as follows:
Q. But you knew that a deal  or at least you were aware that the reason they wanted you to stop Mr. Griggs if you could find a reason to, was that he had been involved in a drug transaction.
A. True. Yes, ma'am.
When Mr. Griggs was unable to locate his driver's license, and began acting "nervous," he was handcuffed behind his back "for officer safety," and told he was being "detained." While his vehicle was being searched, Mr. Griggs remained handcuffed and was told to sit by the side of the road. There were somewhere in the neighborhood of ten officers involved in the investigatory stop. After the police found methamphetamines in his car with the aid of a K-9 unit, an investigator asked him if he wanted "to come down to my office and talk about it." Mr. Griggs agreed to do so. He was then placed in the back of a patrol car while still in handcuffs and transported to an interview room in a police building. He was subsequently interviewed by an investigator who told Mr. Griggs that he would let him go if he agreed to act "as my informant, buying drugs for us, testifying, staying in contact with me via my cell phone." After Mr. Griggs agreed to do so, he was released.
The officer acknowledged in his testimony that if Mr. Griggs had not agreed to provide substantial assistance, he would be taken directly to booking, and placed in confinement. Mr. Griggs testified that he thought he was under arrest because he had been told by police officers on two occasions that he occupied that unfortunate status. The officers, however, denied that they ever used the word, "arrest." Several days after the stop Mr. Griggs spoke to the investigator, the end result of which was that Mr. Griggs declined to act as a confidential informant.
An information was filed on August 23, 2006, charging Mr. Griggs with trafficking in 14 grams or more of methamphetamines and delivery of methamphetamines on April 19, 2005. An arrest warrant had *1200 been issued based on an affidavit, and Mr. Griggs was actually taken into custody on July 29, 2006, prior to the information being filed. The appellant filed a motion for discharge on January 3, 2007. The motion was heard on March 8, 2007, almost two years after the initial stop, and denied by the trial court. Eventually, Mr. Griggs pled no contest to the trafficking offense, specifically reserving his right to appeal the denial of his motion for discharge. The State agreed that the denial of the motion was dispositive, and nolle prossed the delivery charge. After sentencing, this appeal was timely filed.
The right to a "speedy and public trial" is guaranteed by the Sixth Amendment to the United States Constitution, as well as by Article I, Section 16 of the Florida Constitution. In accordance with these constitutional mandates rule 3.191(a), Florida Rules of Criminal Procedure, requires a person such as Mr. Griggs, who is charged with a felony, to be brought to trial within 175 days of "arrest," absent a more specific demand. Subdivision (p) of rule 3.191 describes the remedies for failing to try a defendant within the specified time, which ultimately leads to a discharge of the movant of the crime.
In the present case the State argues that Mr. Griggs was not arrested in April of 2005, when he was stopped, detained and taken off in handcuffs to the police department. Instead, it apparently posits that the speedy trial time did not actually begin to run until July of 2006. The position of the State, as is more specifically stated in its brief, is that Mr. Griggs "was temporarily detained in order to be offered the opportunity to assist the police and help himself out, then released." Essentially the State argues that Mr. Griggs voluntarily went to the police building in handcuffs in order to benefit himself. This position simply flies in the face of the established case law of this state and the facts of this particular case.
Our supreme court "has consistently held that the 175-day speedy trial rule begins upon a defendant's initial arrest." Bulgin, 912 So.2d at 310. It has made it abundantly clear that the speedy trial period commences when an accused is first taken into custody, not when charges are first filed. Id.; State v. Naveira, 873 So.2d 300, 305 (Fla.2004). Moreover, both the Bulgin court and this court have held specifically that a criminal defendant's agreement to cooperate with the police and to provide substantial assistance does not, without more, act as a waiver of the right to a speedy trial, or prevent the running of the speedy trial time. See Bulgin, 912 So.2d at 308; Williams v. State, 757 So.2d 597 (Fla. 5th DCA 2000). Since it is quite clear that simply agreeing to become a confidential informant without an explicit waiver of the right to speedy trial will not be enough to prevent the time from running, we need only now address whether Mr. Griggs was arrested in July of 2005.
In Melton v. State, 75 So.2d 291 (Fla.1954), the Florida Supreme Court set out four factors to determine whether or not an accused has been arrested.
When used in this sense, an arrest involves the following elements: (1) a purpose or intention to effect an arrest under a real or pretended authority; (2) an actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) a communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) an understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.
*1201 Melton, 75 So.2d at 294; see also Kyser v. State, 533 So.2d 285, 287 (Fla.1988). There is little doubt that Mr. Griggs was seized  he was, after all, placed in handcuffs and taken off to a police building. Likewise, the involved law enforcement officers, whether they used the word "arrest" or not, undoubtedly communicated their intention to effect an arrest by their actions. Finally, Mr. Griggs testified that he thought that he was being arrested by the police, and that he was not free to leave. This leaves only the first factor  the purpose or intention to effect an arrest  for further consideration.
Section 901.151(3), Florida Statutes (2007), entitled "Stop and Frisk Law," is of importance in connection with the consideration of the investigatory stop to which Mr. Griggs was subjected. Subsection (2) allows a law enforcement officer temporarily to detain a person when he or she encounters that person under circumstances that reasonably indicate that such person has committed, is committing, or is about to commit a crime. Subsection (3), which places limits on this authority, reads as follows:
No person shall be temporarily detained under the provisions of subsection (2) longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof. (Emphasis added).
We agree with our sister court in the First District that this statute explicitly indicates that "an investigatory stop may not extend beyond the place of the initial encounter." See Kollmer v. State, 977 So.2d 712, 715 (Fla. 1st DCA 2008). Likewise, we agree with the Third District's formulation of this principle:
Where . . . the detained individual is physically removed from the scene and involuntarily transported to the police station for questioning and/or investigation, the courts have had little difficulty in construing such a detention to be a de facto arrest . . .
Saturnino-Boudet v. State, 682 So.2d 188, 193 (Fla. 3d DCA 1996), review dismissed, 689 So.2d 1071 (Fla.1997); see also Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985).
In the present case Mr. Griggs was removed from the scene and transported to a police facility for the purpose of either having him agree to provide substantial assistance, or be booked immediately into the jail. We conclude that this is no different than removing the person from the scene for questioning. It is quite clear that if Mr. Griggs did not accede to the investigator's invitation to "talk about it," he would not have been released. He would instead have been taken directly to jail. One way or the other, he was not going to remain at the scene. Thus, the State's position that Mr. Griggs voluntarily left the scene in order to go to the police building is utterly implausible. The situation went well beyond an investigatory stop by the time he was taken away to meet with the investigator.
Since all four Melton factors were present, it is abundantly clear that Mr. Griggs was arrested in July of 2005, that the speedy trial time elapsed, and that his motion for discharge should have been granted. Accordingly, we reverse the judgment and sentence imposed, and remand for the purpose of discharging the appellant.
Finally, Justice Quince in her concurring opinion in Bulgin urged that rule 3.191 be amended to allow for an extension of speedy trial under the circumstances of the present case. The rule to date, however, *1202 has not been amended. We join in the suggestion that the rule be amended.
REVERSED and REMANDED.
ORFINGER and LAWSON, JJ., concur.