ROWE, J.
The state appeals the trial court’s order suppressing evidence seized by police from Christopher Hannah at the crime scene. The trial court ruled that the officers exceeded the proper scope of the investigatory detention by transporting Hannah from the place where he was first detained by police to the scene of the crime. The state argues that the scope of the investigatory detention was not exceeded because the crime scene was within the immediate vicinity of the place where Hannah was initially detained. The state also argues that the evidence seized from Hannah at the crime scene would have been admissible under the doctrine of inevitable discovery. We agree, and for the reasons set forth below, we reverse the order on appeal.

FACTS

During the hearing on the motion to suppress, two police officers testified that they responded to a report of a vehicular burglary at 1961 West Sharon Street in Quincy. As one of the officers approached the crime scene, he encountered Hannah, who had emerged from behind a vacant house at 1923 West Sharon Street. The officer asked for and received Hannah’s name. The officer also asked Hannah why he was present at the location. Hannah provided evasive responses. While continuing to question Hannah, the police learned from a radio transmission that Hannah was a suspect in other burglary *228 cases under investigation by the police department. After receiving this information, Hannah was placed in the back of the patrol car, without handcuffs, and transported two houses down to the crime scene. One of the officers testified that the distance between the place where Hannah was stopped and the crime scene was less than half a block.
When Hannah arrived at the scene, an officer observed that Hannah’s shoes appeared to match the shoe prints on the ground at the scene. After determining that they matched, the officers placed Hannah under arrest for the burglary. Next, the officers performed a check for any outstanding warrants, and learned that there were outstanding warrants for Hannah’s arrest. At the motion hearing, one of the officers testified that even if Hannah had not been a suspect in the 1961 West Sharon Street burglary, it would have been normal operating procedure to have checked for outstanding warrants before breaking contact with a person who had been stopped, especially once it was discovered that the person was a suspect in other burglaries.
The trial court granted Hannah’s motion to suppress, explaining that pursuant to section 901.151, Florida Statutes, and this court’s decision in Kollmer v. State, 977 So.2d 712 (Fla. 1st DCA 2008), an investigatory stop exceeds the scope of lawful detention if the detainee is moved beyond the place of the initial detention or its immediate vicinity. In its order, the trial court referred to the officer’s testimony that Hannah was approximately “two houses down, not even half a block” from the crime scene when the officer made contact with Hannah. The trial court determined that “the police conduct in this case was entirely reasonable and the additional deprivation of liberty represented by placing Hannah in a car unhandcuffed and transporting him half a block was so minimal as to be insignificant.” But based on this court’s decision in Kollmer, the trial court concluded that a distance sufficient to require transportation by a motor vehicle was not within the “immediate vicinity” of the place where Hannah was initially detained. The trial court also declined to find that the evidence seized at the crime scene was admissible under the doctrine of inevitable discovery because the outstanding warrants were not discovered until Hannah had been transported to the crime scene and his shoes had been seized.
I. LAWFUL SCOPE OF INVESTIGATORY STOP
The encounter between Hannah and the officers in this case was an investigatory stop, commonly known as a Terry stop. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because the police had reasonable suspicion to stop Hannah, the lawfulness of the stop itself is not in question. Rather, the question presented in this case is whether the police officers exceeded the lawful scope of the investigatory stop by moving Hannah from the place where he was initially detained to the crime scene, half a block away.
Section 901.151(3), Florida Statutes, commonly known as the “Stop and Frisk Law,” codifies the principles set forth in Terry, State v. Cook, 475 So.2d 285, 286 (Fla. 5th DCA 1985), and provides that the scope of an investigatory detention extends to “the place where it was first effected or the immediate vicinity thereof.” Although the Legislature did not provide a definition for the term “immediate vicinity,” the inclusion of the term in the statute demonstrates the Legislature’s recognition that some movement of the detainee from the *229 place where he is initially detained is permissible. § 901.151(B), Fla. Stat.
No Florida court has expressly construed the term “immediate vicinity.” Excluding cases examining movement of the detainee from the place of the initial detention to the police station,[1] our research has only revealed one Florida case determining whether movement of a detainee was within the “immediate vicinity” of the place where the detainee was initially stopped, Kollmer v. State, 977 So.2d 712 (Fla. 1st DCA 2008). In Kollmer, this court held that police officers exceeded the scope of a lawful investigatory stop by transporting the detainee away from the place where he was initially detained to the crime scene. There, an officer testified he saw a white male fleeing into a wooded area; a police dog tracked this individual through the woods and located the man lying on his back in a yard. Id. at 713-14. That person was transported to the scene of the crime in a police car, wearing handcuffs, for the victim to identify. Id. at 714. Citing section 901.151(3), Florida Statutes, as well as federal cases involving movement of a detainee from the place of the initial detention to a police station, the Kollmer court concluded that the officers exceeded the scope of a lawful investigatory stop by placing the detainee in the police car and transporting him from the place where he was initially stopped to the location where he was identified by the victim. Id. at 715. While the Kollmer court did not provide specific details regarding the distance from the place where the detainee was first stopped to the place that the detainee was transported, implicit in the Kollmer court’s holding is that the movement of the detainee was beyond the “immediate vicinity” of the place where the detainee was initially stopped. Id.
Federal courts examining police encounters under the Fourth Amendment have found that the scope of an investigatory stop is not exceeded when the detainee is moved from the point where the detainee is first stopped to a location nearby. See, e.g., United States v. McCargo, 464 F.3d 192, 198 (2d Cir.2006) (finding that transportation of a matter of “blocks” did not exceed the scope of a Terry stop and was reasonable, allowing the court to conclude that “in some circumstances, police may transport a suspect short distances in aid of a Terry stop”); accord, United States v. Vanichromanee, 742 F.2d 340, 345 (7th Cir.1984) (concluding that moving defendant from a parking garage to an apartment did not turn the investigatory detention into an arrest because “[t]he ultimate question [was] not why the detainees were moved, but whether the move made the stop more intrusive”). However, if the detainee is moved to a location not in close proximity to where the detainee was first stopped, then courts have found that the scope of the investigatory detention has been exceeded. See, e.g., United States v. Virden, 488 F.3d 1317, 1321 (11th Cir.2007) (providing that a seizure that was “accomplished by the taking of [the defendant’s] vehicle to a new location [two miles away] for the purposes of investigation” was “unreasonable absent probable cause because of its scope and intrusiveness”).
In this case, Hannah was transported just half a block from where he was initially stopped by the police. Based upon *230 these facts, we conclude that Hannah’s detention did not extend beyond the immediate vicinity of the place where he was initially stopped. Accordingly, we reverse the trial court’s order and remand for further proceedings.
II. INEVITABLE DISCOVERY
 Another basis for reversal of the suppression order is the trial court’s conclusion that the doctrine of inevitable discovery did not apply. Although in most cases “the trier of fact must find by a preponderance of the evidence that the information sought to be suppressed would have been discovered by lawful means,” an appellate court may reverse a suppression order where the record on appeal establishes without dispute that the evidence inevitably would have been found. State v. Walton, 565 So.2d 381, 384 (Fla. 5th DCA 1990).
Here, the record establishes without dispute that the evidence seized from Hannah at the crime scene would have been inevitably discovered. Immediately after detaining Hannah, but before transporting him to the crime scene, the police learned Hannah’s name and that he was a suspect in other burglary cases. One of the officers testified that even if Hannah had not been a suspect in the burglary at 1961 West Sharon Street, it would have been normal operating procedure to check for outstanding warrants before breaking contact with the detainee, especially once the officer learned that the detainee was a suspect in other burglaries. Once the police discovered Hannah’s outstanding warrants, the police would then have had probable cause to search Hannah’s person and seize Hannah’s shoe in a search incident to arrest. See Hatcher v. State, 834 So.2d 314 (Fla. 5th DCA 2003) (applying inevitable discovery doctrine where the police officers would have inevitably found the evidence based upon normal police investigatory procedures of running warrants search after issuing a citation).
Accordingly, we reverse the suppression order and remand for further proceedings.
REVERSED AND REMANDED.
ROBERTS and WETHERELL, JJ., concur.

. Federal and Florida courts have held that the scope of a lawful investigatory detention is exceeded when the defendant is moved from the place where the defendant is initially detained to the police station for questioning, concluding that such seizures are sufficiently like arrests and, thus, require probable cause. See Hayes v. Florida, 470 U.S. 811, 815-16, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Griggs v. State, 994 So.2d 1198, 1201 (Fla. 5th DCA 2008).