WARNER, J.
In this appeal from an adjudication of delinquency, the juvenile contends that the trial court erred in denying his motion to suppress his confession, which resulted from what he claims was an illegal detention for loitering and prowling. We agree that, even though the deputy could have reasonably stopped the juvenile for truancy, he did not have probable cause to arrest the juvenile for loitering and prowling. Thus, the transport and questioning of the juvenile at the police station, which resulted in the juvenile’s confession to burglary, violated his Fourth Amendment rights. We reverse.
On a Thursday about mid-day, Broward Deputy Sheriff Johnson, who was on road patrol, observed appellant, M.J., in front of a house in a high crime area of Broward County. Deputy Johnson knew M.J. from prior dealings, including the fact that he was seventeen and should have been in school at that time. The deputy made a u-turn in his vehicle to initiate a truancy investigation. By the time he turned around, he saw M.J. start running and disappear from his view. The deputy stopped at the house where he had seen M.J., went up to the porch, and found M.J. lying along the concrete wall inside the porch.
The deputy grabbed M.J. and told him to stand up. He then read M.J. Miranda rights. He asked M.J. what he was doing there. M.J. said he was at the house to see a friend. The deputy knocked on the door but no one answered.
A second deputy came on the scene and Deputy Johnson, being suspicious about the circumstances, walked around the house. In some bushes on the side of the house, he discovered three boxes containing new sports sneakers. At that point, about five or ten minutes after M.J. was detained, Deputy Johnson noticed the home’s resident, whom he knew from prior dealings, at the home’s window. Through the window, the resident told the deputy that M.J. had brought the shoes to his residence. The deputy knew that the resident had prior burglaries on his record. The deputy never asked the resident whether M.J. had permission to be on his property.
The officer arrested M.J. for loitering and prowling and transported him to the sheriffs office where an interrogation was conducted. At the time of the arrest, the deputy had “no idea that the sneakers were stolen.” When he got to the station, however, a third deputy informed him that a burglary of shoes had been reported. M.J. ultimately confessed to that burglary during the interrogation.
Deputy Johnson admitted that generally a truancy investigation would result in the return of the child to school or the child’s parents. He did not return M.J. to school because he arrested him for loitering and prowling. The circumstances Deputy Johnson identified as supporting the arrest were M.J.’s running and hiding from him when he turned his vehicle around and that M.J.’s explanation as to why he was on the porch — to see a friend — was not “valid,” because when Deputy Johnson looked at the resident through the window, it appeared as though the resident had just awoken.
The trial court ruled that Deputy Johnson was authorized to commence a truancy investigation. Based upon the totality of the circumstances after Deputy Johnson observed M.J. fleeing from him, the court believed the circumstances were “suspi *1154 cious” and justified Deputy Johnson’s continued detention and investigation of M.J. The court then denied the motion to suppress.
M.J. reserved the right to appeal the denial of the motion to suppress, and the state did not contest the dispositive nature of the motion. Following the denial, he entered a no contest plea to the charge of burglary of a dwelling. The court withheld adjudication and sentenced M.J. to juvenile probation. This appeal follows.
Our standard of review requires us to defer to the trial court’s factual findings but review its legal conclusions de novo. Connor v. State, 803 So.2d 598, 605 (Fla.2001); State v. E.W., 82 So.3d 150, 151 (Fla. 4th DCA 2012). The trial court made the factual finding that the officer was authorized to conduct a truancy investigation when he stopped M.J. Section 984.13, Florida Statutes (2012), allows a law enforcement officer to take a child “into custody” when “the officer has reasonable grounds to believe that the child is absent from school without authorization ... for the purpose of delivering the child without unreasonable delay to the appropriate school system site.” § 984.13(l)(b), Fla. Stat. (2012). The officer may also deliver the child to his parents if the student has been suspended or expelled from school. Id. Therefore, Deputy Johnson had the authority to take M.J. into custody.
Truancy, however, is not a crime. See C.G. v. State, 689 So.2d 1246, 1247 (Fla. 4th DCA 1997). While a law enforcement officer has the authority to take a juvenile into custody, that authority is limited to returning the child to school or the child’s parents. The officer does not have the statutory authority to transport the child to a police station for further questioning based upon truancy.
Where the officer has reasonable suspicion that a person is involved in criminal activity, the officer may conduct an investigatory stop. See Popple v. State, 626 So.2d 185, 186 (Fla.1993). That investigation should be limited and cannot extend beyond the place of initial encounter. See Kollmer v. State, 977 So.2d 712, 715 (Fla. 1st DCA 2008). To transport an individual for additional questioning, a law enforcement officer must have probable cause for an arrest.
Where ... the detained individual is physically removed from the scene and involuntarily transported to the police station for questioning and/or investigation, the courts have had little difficulty in construing such a detention to be a de facto arrest requiring either probable cause or prior judicial authorization.
Id. (citing Saturnino-Boudet v. State, 682 So.2d 188, 193 (Fla. 3d DCA 1996)); see also Mathis v. Coats, 24 So.3d 1284, 1287 (Fla. 2d DCA 2010). In this case, Deputy Johnson placed M.J. under arrest and transported him to the sheriffs office for questioning; therefore, the question we must answer is whether the totality of the circumstances provided him with probable cause to arrest M.J. for loitering and prowling.
Section 856.021, Florida Statutes (2012), provides: “It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.” § 856.021(1), Fla. Stat. (2012). When a person takes “flight upon appearance of a law enforcement officer” or “manifestly endeavors to conceal himself or herself or any object,” this is a circumstance for consideration in determining the alarm or immediate concern element. § 856.021(2), *1155 Fla. Stat. (2012). Prior to arrest, a law enforcement officer must give the suspect the opportunity to explain his conduct. Id.
We have explained, “[b]ecause of its potential for abuse, the loitering statute must be applied with special care.” P.R. v. State, 97 So.3d 980, 982 (Fla. 4th DCA 2012) (citing Springfield v. State, 481 So.2d 975, 977 (Fla. 4th DCA 1986)). “It is not to be used as a ‘catch-all’ provision when there is an insufficient basis for another charge.” Id. (citing B.A.A. v. State, 356 So.2d 304, 306 (Fla.1978)).
The statute is comprised of two elements. “To satisfy the first element, the state must prove that ‘the defendant engaged in incipient criminal behavior which law-abiding people do not usually engage in due to the time, place, or manner of the conduct involved.’ ” P.R., 97 So.3d at 983 (quoting E.C. v. State, 724 So.2d 1243, 1244 (Fla. 4th DCA 1999)). “To satisfy the second element, the state must demonstrate that the loitering occurred under ‘circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.’” Id. at 983 (quoting § 856.021(1), Fla. Stat. (2010)). In P.R., we explained:
“[T]he offense of loitering and prowling must be completed prior to any police action.” E.C. [v. State, 724 So.2d 1243, 1245 (Fla. 4th DCA 1999)]. And because flight from police comes after the officers’ presence is made known, flight alone is insufficient to satisfy the elements of loitering and prowling. See Hunter v. State, 32 So.3d 170, 175 (Fla. 4th DCA 2010) (“Although the defendants both fled toward their residence when the officers announced their presence, this flight does not retroactively supply the elements that an officer must observe to satisfy the requirements of loitering and prowling.”).
Id. For example, in D.S.D. v. State, 997 So.2d 1191, 1194 (Fla. 5th DCA 2008), the Fifth District held that “[possession of burglary tools may support a suspicion of imminent criminal activity after the fact, but the offense of loitering and prowling must be completed prior to any police action.” See also E.C., 724 So.2d at 1245-46 (possession of a twelve-inch screwdriver supports a suspicion of imminent criminal activity after the fact, but was insufficient to support an arrest for loitering and prowling). In addition, as we noted in Hunter v. State, 32 So.3d 170, 175 (Fla. 4th DCA 2010), mere flight from an officer is insufficient to establish the crime of loitering and prowling without an officer’s reasonable suspicion that a crime has been committed or is about to be committed.
Deputy Johnson saw M.J. and suspected him of being a truant, not of committing a crime. M.J.’s flight after observing the deputy, who knew him, did not provide probable cause for a loitering and prowling arrest. Indeed, it may have been quite normal of a truant to flee from law enforcement. All other conduct on which the deputy relied in his decision to arrest M.J. occurred after stopping and detaining M.J. Even if the deputy were allowed to rely on the discovery of the sports shoes as part of the probable cause on which he based the arrest, he admitted that he had no idea that the shoes were the subject of a burglary. Assuming that M.J. had possessed them, he could have purchased them. Thus, the deputy had only a bare suspicion that M.J. was up to something. There was nothing at the time and place of MJ.’s detention to provide probable cause that any criminal activity had occurred, was occurring, or was about to occur.
Because Deputy Johnson did not have probable cause to support an arrest for loitering and prowling, M.J.’s detention and transport to the station for question *1156 ing was illegal, making his confession the fruit of an illegal arrest. See Wong Sun v. United States, 371 U.S. 471, 485-87, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The court erred in denying its suppression. As the issue is dispositive, we direct that the court dismiss the delinquency petition on remand.
CONNER, J., and LEVENSON, JEFFREY R., Associate Judge, concur.